DREW, E. HARRIS (Ret.), Associate Judge.
Richard Washington was convicted of the unlawful possession of a controlled substance (heroin), and sale and delivery of such substance. His conviction was based solely on the testimony of Police Officer Barbara Simms, who testified that she and a confidential informant (Jarrow) purchased $100.00 of heroin from Washington.
Prior to the trial, the State and the defendant agreed (and the court approved such agreement) that a polygraph examination would be made of the defendant and that, whether favorable or unfavorable, it would be used and presented in the trial. The expert agreed on to conduct such examination made his report, in which he said:
* * * * 4- *
*909 “It is the opinion of this examiner that Richard Washington never sold heroin to Officer Barbara Simms. He never passed heroin into her hand, that the $150 he received in the presence of Simms and Jarrow was handed to him by Jarrow. That $150 was for the repayment of a loan to Jarrow, the confidential informant.”
On the witness stand, this expert, in answer to the final question in an extensive cross-examination, said:
“It’s definitely my opinion that Richard Washington was telling me the truth that he did not sell heroin to the narcotics officer, nor did he receive money from her; that the $50 that he did receive came from the confidential informant, Jarrow, as repayment of a debt. There are good strong reactions. There is absolutely no doubt in my mind.”
The defendant’s principal contention here is that the closing remarks of the State Attorney to the jury were of such nature and so prejudicial that a reversal and new trial is commanded by the law. The remarks objected to are:
* * * * * *
“When I told them [the police officers] that the man [the accused] took a polygraph examination and the examiner says it appears he’s not being deceptive, why are they still sitting [in the courtroom], why don’t they shirk, why don’t they drop that case?
“ ‘Waksman, we will do another one’, you don’t see them running away.
“The defendant admitted through the polygraph examiner that she [the undercover officer] was in his house. Why didn’t she stay in the office and conduct this investigation? She’s a police officer, everyday floating through Liberty City, everyday their life is on the line.
“We saw wakes, three police officers working — ■” [emphasis added]
Although the transcript of testimony at the trial fails to show any additional prejudicial remarks by the State Attorney, appellant argued in his motion for new trial and here that in addition to the above, and while appellant was making his objection to the court, the State Attorney additionally said: “You know what is happening to the police officers in this community”. He argues that the fact such statement was made is evidenced by the trial judge’s instruction to the jury to disregard the remark, viz: “The jury will disregard any remarks by the prosecutor concerning what may or may not have happened to police officers.” [emphasis added by appellant]. Additionally, appellant argues that while the trial judge admonished the jury, as quoted above, he failed to rebuke the prosecutor for making such remarks.[1]
The State says that the remarks of the State Attorney were justified because of the repeated, although “thinly veiled attacks” on the integrity of the Miami police officers by appellant’s counsel in his opening argument.[2] While there may be some merit to the State’s position and while we would, in many cases, look upon the situation here as falling within the harmless error doctrine, for the reasons hereafter discussed we think a new trial is clearly required by the law.
The trial in this cause was conducted about two weeks subsequent to the shooting deaths of three police officers in Miami Beach, who were in the process of arresting an alleged car thief. During the period between the deaths of these officers and the time of the remarks of the prosecuting attorney, the local newspapers had carried many stories of these killings and had conducted a long series recounting the deaths of some 15 police officers over the past years. At the hearing on the motion for new trial, appellant presented to the trial court some 20 exhibits of various newspaper *910 stories on the deaths of police officers killed in the line of duty, all of which were of wide distribution in the County and, during the short period immediately preceding the trial, examples of headlines or leads on some of the articles are: “Policemen, they died protecting us. The saga of 15 fallen officers.” “A memorial to Dade’s fallen heroes.” “Citizens and brother officers mourn three slain policemen.”
We now turn to the testimony of the only witness for the State, who testified as to the purchase of the heroin from the defendant, Barbara Simms. She had been a plain clothes police investigator for about one year and an undercover agent in the narcotics division about six months prior to the purchase from the defendant and, during such period, had been responsible for 40 to 45 similar arrests. The trial was held April 14th to 16th, 1976, some 8V2 months later. At the trial, she identified the defendant and clearly related the circumstances of the purchase and that she paid the defendant $100.00 for the heroin. The only person present during the transaction was the undercover agent, who did not testify. A recorder hidden on the person of Officer Simms, for the purpose of recording and transmitting any conversation and to enable police officers stationed nearby with receivers to respond to a call for help from her, malfunctioned (according to the State’s evidence) and no part of the dialogue of the sale was available at trial.
We cannot accept the State’s argument that the admonishment of the jury by the trial court, even though he failed to rebuke the prosecutor, cured any error which might have been committed; nor can we agree that, on the record in this case, the error was harmless. There could have been no other purpose in making the questioned remarks, in the light of the flood of publicity as here related, except to bring to the jury’s attention facts far beyond the scope of the issues being tried. Had the evidence of defendant’s guilt here been (as is required in these circumstances) “beyond a reasonable doubt”[3] in the minds of the reviewing court, the harmless error statute may well have been applicable and we would probably have applied it. But such is not the case. There are too many questions yet unanswered, and too much doubt as to the answers given; a grave possibility of the failure to receive a constitutionally guaranteed fair trial in the face of the emotions created by the deaths of the three police officers and the publicity concerning many others who had been killed in the line of duty, for us to say that we have “no reasonable doubt” as to the guilt of the defendant. We think, and hold, that the ends of justice require that the conviction be set aside and that the defendant be tried anew.
We find no merit to the defendant’s Point III concerning the origin and identification of the contraband.
Reversed for new trial.

. Pait v. State, 112 So.2d 380 (Fla.1959); Deas v. State, 119 Fla. 839, 161 So. 729 (1935).

. Wingate v. State, 232 So.2d 44 (Fla. 3rd D.C. A.1970); Ricks v. State, 242 So.2d 763 (Fla. 3rd D.C.A.1971); Broge v. State, 288 So.2d 280 (Fla. 4th D.C.A. 1974); Gray v. State, 296 So.2d 612 (Fla. 3rd D.C.A.1974); Pitts v. State, 307 So.2d 473 (Fla. 1st D.C.A.1975).

. Chapman v. California, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967).